IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF KANSAS

MARK BLAND,

              Plaintiff,

vs.                                      Case No. 09-1254-SAC

MICHAEL J. ASTRUE,
Commissioner of
Social Security,

              Defendant.

MEMORANDUM AND ORDER

This is an action reviewing the final decision of the Commissioner of Social Security denying the plaintiff supplemental security income payments. The matter has been fully briefed by the parties.

## I. General legal standards

The court's standard of review is set forth in 42 U.S.C. § 405(g), which provides that "the findings of the Commissioner as to any fact, if supported by substantial evidence, shall be conclusive." The court should review the Commissioner's decision to determine only whether the decision was supported by substantial evidence and whether the Commissioner applied the correct legal standards. <u>Glenn v. Shalala</u>, 21 F.3d 983, 984 (10th Cir. 1994). Substantial evidence requires more than a scintilla, but less than a preponderance, and is satisfied by such evidence that a reasonable mind might accept to support the

1

conclusion. The determination of whether substantial evidence supports the Commissioner's decision is not simply a quantitative exercise, for evidence is not substantial if it is overwhelmed by other evidence or if it really constitutes mere conclusion. Ray v. Bowen, 865 F.2d 222, 224 (10th Cir. 1989). Although the court is not to reweigh the evidence, the findings of the Commissioner will not be mechanically accepted. Nor will the findings be affirmed by isolating facts and labeling them substantial evidence, as the court must scrutinize the entire record in determining whether the Commissioner's conclusions are rational. Graham v. Sullivan, 794 F. Supp. 1045, 1047 (D. Kan. 1992). The court should examine the record as a whole, including whatever in the record fairly detracts from the weight of the Commissioner's decision and, on that basis, determine if the substantiality of the evidence test has been met. Glenn, 21 F.3d at 984.

The Social Security Act provides that an individual shall be determined to be under a disability only if the claimant can establish that they have a physical or mental impairment expected to result in death or last for a continuous period of twelve months which prevents the claimant from engaging in substantial gainful activity (SGA). The claimant's physical or mental impairment or impairments must be of such severity that they are not only unable to perform their previous work but cannot, considering their age, education, and work experience, engage in

2

any other kind of substantial gainful work which exists in the national economy.  42 U.S.C. § 423(d).

The Commissioner has established a five-step sequential evaluation process to determine disability.  If at any step a finding of disability or non-disability can be made, the Commissioner will not review the claim further.  At step one, the agency will find non-disability unless the claimant can show that he or she is not working at a "substantial gainful activity."  At step two, the agency will find non-disability unless the claimant shows that he or she has a "severe impairment," which is defined as any "impairment or combination of impairments which significantly limits [the claimant's] physical or mental ability to do basic work activities."  At step three, the agency determines whether the impairment which enabled the claimant to survive step two is on the list of impairments presumed severe enough to render one disabled.  If the claimant's impairment does not meet or equal a listed impairment, the inquiry proceeds to step four, at which the agency assesses whether the claimant can do his or her previous work; unless the claimant shows that he or she cannot perform their previous work, they are determined not to be disabled.  If the claimant survives step four, the fifth and final step requires the agency to consider vocational factors (the claimant's age, education, and past work experience) and to determine whether the claimant is capable of performing other

jobs existing in significant numbers in the national economy. Barnhart v. Thomas, 124 S. Ct. 376, 379-380 (2003).

The claimant bears the burden of proof through step four of the analysis. Nielson v. Sullivan, 992 F.2d 1118, 1120 (10th Cir. 1993). At step five, the burden shifts to the Commissioner to show that the claimant can perform other work that exists in the national economy. Nielson, 992 F.2d at 1120; Thompson v. Sullivan, 987 F.2d 1482, 1487 (10th Cir. 1993). The Commissioner meets this burden if the decision is supported by substantial evidence. Thompson, 987 F.2d at 1487.

Before going from step three to step four, the agency will assess the claimant's residual functional capacity (RFC). This RFC assessment is used to evaluate the claim at both step four and step five. 20 C.F.R. §§ 404.1520(a)(4), 404.1520(e,f,g); 416.920(a)(4), 416.920(e,f,g).

**II. History of case**

On October 28, 2008, administrative law judge (ALJ) Melvin B. Werner issued his decision (R. at 18-27). Plaintiff alleges that he has been disabled since June 18, 2007 (R. at 18). At step one, the ALJ determined that plaintiff has not performed substantial gainful activity since June 18, 2007, the alleged onset date (R. at 20). At step two, the ALJ found that plaintiff had the following severe impairments: mental deterioration, possibly substance/alcohol related; osteoarthritis of back and

4

peripheral joints; peripheral neuropathy; and history of seizures (R. at 20). At step three, the ALJ determined that plaintiff's impairments do not meet or equal a listed impairment (R. at 20-22). After determining plaintiff's RFC (R. at 22), the ALJ found at step four that plaintiff is unable to perform any past relevant work (R. at 26). At step five, the ALJ found that plaintiff could perform other jobs that exist in significant numbers in the national economy (R. at 26-27). Therefore, the ALJ concluded that plaintiff was not disabled (R. at 27).

**III. Did the ALJ err by failing to address whether plaintiff's impairment met or equaled listed impairment 12.05C?**

Plaintiff has the burden at step three of demonstrating, through medical evidence, that his/her impairments meet all of the specified medical criteria contained in a particular listing. Riddle v. Halter, 10 Fed. Appx. 665, 667 (10th Cir. March 22, 2001). For a claimant to show that his impairment matches a listing, it must meet all of the specified medical criteria. An impairment that manifests only some of those criteria, no matter how severely, does not qualify. Sullivan v. Zebley, 493 U.S. 521, 530, 110 S. Ct. 885, 891 (1990). Because the listed impairments, if met, operate to cut off further inquiry, they should not be read expansively. Caviness v. Apfel, 4 F. Supp.2d 813, 818 (S.D. Ind. 1998).

The ALJ is required to discuss the evidence and explain why

he found that the plaintiff was not disabled at step three. This court should not properly engage in the task of weighing evidence in disability cases. The court's function is only to review the Commissioner's decision to determine whether his factual findings are supported by substantial evidence and whether he applied the correct legal standards. In the absence of ALJ findings supported by specific weighing of the evidence, the court cannot assess whether relevant evidence adequately supports the ALJ's conclusion that the plaintiff did not meet or equal any listed impairment. <u>Clifton v. Chater</u>, 79 F.3d 1007, 1009 (10th Cir. 1996).

Plaintiff argues that his impairments meet or equal listed impairment 12.05C, and that the ALJ erred by failing to consider whether plaintiff's impairments met or equaled listed impairment 12.05C. Listed impairment 12.05C is as follows:

> 12.05 *Mental retardation:* Mental retardation refers to significantly subaverage general intellectual functioning with deficits in adaptive functioning initially manifested during the developmental period; *i.e.,* the evidence demonstrates or supports onset of the impairment before age 22.
>
> The required level of severity for this disorder is met when the requirements in A, B, C, or D are satisfied....
>   \*  \*  \*
> C. A valid verbal, performance, or full scale IQ of 60 through 70 and a physical or other mental impairment imposing an additional and significant work-related limitation of function.

6

20 C.F.R., Pt. 404, Subpt. P., App. 1 at 479 (2010 at 508).

At step three, the ALJ discussed a number of listed impairments, but never mentioned listed impairment 12.05C (R. at 20-22). Plaintiff argues that 12.05C should have been discussed at step three because of a psychological evaluation by Julie Moreland, M.S., LMLP, dated August 26, 2008 (R. at 372-374). Ms. Moreland's report indicated that she administered an IQ test, and that plaintiff scored in the low range with an "IQ of 67 (range 63-74)" (R. at 373). Ms. Moreland stated that there was a "12 point discrepancy between his verbal and performance scores. His strength was in hands-on activities" (R. at 373). Ms. Moreland also noted that plaintiff completed the MCMI, a questionnaire designed to assess an individual's clinical personality patterns and syndromes. Ms. Moreland stated that "his profile [on the MCMI] was valid for interpretation, however he tended to acknowledge many symptoms thus exaggerating his scores" (R. at 373).

The only other psychological evaluation performed on the plaintiff was by Dr. Barnett, a psychologist, on August 8, 2007 (R. at 239-241). Dr. Barnett's diagnostic impressions were: "attention deficit disorder, mild, "consider learning disorder nos" and "consider borderline intellectual functioning" (R. at 241). Dr. Barnett concluded as follows:

> Mr. Bland does not appear to be cognitively limited in a manner that would interfere with

7

> many types of employment.  He showed no
> difficulty with attention during the
> interview, but has mild concentration
> problems.  He appears capable of simple work
> tasks and some complex tasks.  He identifies
> foot and back problems, poor concentration,
> and frequent daydreaming as the most
> significant barriers to employment.  He
> relates a positive history of work
> relationships and was appropriate with me
> during the interview.

(R. at 241).

Although the ALJ did not discuss listed impairment 12.05C, the ALJ did discuss the evaluation by Ms. Moreland, including the IQ test, as part of his RFC analysis:

> He did report a history of alcohol abuse with
> no recent problems. <u>The WASI test noted
> intelligence in the low range with an IQ of
> 67 and a notation that there was a 12 point
> discrepancy between his verbal and
> performance scores. The MCMI test was valid
> for interpretation; however, he tended to
> acknowledge many symptoms thus exaggerating
> his scores</u>. The diagnostic impression
> provided by Julie Moreland, M.S., LMLP on
> August 28, 2008 was major depressive
> disorder, recurrent without psychosis, ADHD,
> predominately inattentive type and mild
> mental retardation. She provided a GAF of 40.
> She recommended therapy and medication
> (exhibit C16F). The undersigned notes that
> these assessments provided by the same
> agency are different as they relate to the
> date of treatment. It is noted that the
> claimant presented to the Counseling Center
> for an assessment for disability on July 17,
> 2008, a few weeks before the scheduled
> hearing. That report was completed on August
> 28, 2008. However, <u>the claimant had returned
> to the therapist for a couple of contacts
> with those records noting immediate
> improvement with medication and a GAF of 55.
> The undersigned finds this to be consistent</u>

8

>             with the earlier assessment by Dr. Barnett
>             noting only mild attention deficit disorder
>             and consider leaning disorder or borderline
>             intellectual functioning with the ability to
>             perform simple and some complex work tasks.
>
>                         ........
>
>             In regard to the mental complaints, he has
>             not sought any treatment until days before
>             the hearing held on September 2, 2008.
>             Although IQ testing noted an IQ of 67, there
>             was some discrepancy between verbal and
>             performance scores and a notation of
>             exaggeration. The prior mental examination
>             completed by Dr. Barnett found only mild
>             attention deficit disorder with the ability
>             to manage simple work tasks and some complex
>             tasks. This appears to be consistent with the
>             claimant's daily activities...At the
>             consultative examination with Dr. Barnett in
>             August 2007, the claimant reported a positive
>             history of work relationships.

(R. at 24, 25, emphasis added).

In light of the fact that the ALJ had before him a psychological assessment indicating an IQ of 67, and a diagnostic impression of mild mental retardation (R. at 373, 374), the ALJ clearly erred by failing to consider listed impairment 12.05C in his step three analysis. The question before the court is whether the failure to make findings at step three regarding listed impairment 12.05C is harmless error in light of the ALJ's analysis of the evidence at subsequent steps of the sequential evaluation process.

Courts should apply the harmless error analysis cautiously in the administrative review setting. Fischer-Ross v. Barnhart,

431 F.3d 729, 733 (10th Cir. 2005).  However, it may be appropriate to supply a missing dispositive finding under the rubric of harmless error in the right exceptional circumstance where, based on material the ALJ did at least consider (just not properly), the court could confidently say that no reasonable factfinder, following the correct analysis, could have resolved the factual matter in any other way.  Fischer-Ross, 431 F.3d at 733-734; Allen v. Barnhart, 357 F.3d 1140, 1145 (10th Cir. 2004).

Although the ALJ did not discuss either 12.05C or the psychological assessment by Ms. Moreland when making his step three findings, the ALJ did discuss Ms. Moreland's assessment, the IQ score of 67 (range 63-74), and her diagnosis of mild mental retardation in his discussion of the evidence that formed the basis for his RFC findings.  The ALJ noted that there was a discrepancy between the verbal and performance IQ scores, and also noted that, on a separate test (MCMI), plaintiff tended to acknowledge many symptoms thus exaggerating his scores.  The ALJ also noted that a prior psychological examination by Dr. Barnett found only mild attention deficit disorder with the ability to manage simple work tasks and some complex tasks, which the ALJ found to be consistent with plaintiff's daily activities.  The ALJ stated that Dr. Barnett's report indicated "consider"

borderline intellectual functioning"[1] (R. at 24, 25). The ALJ further indicated that the treatment records in 2008 were consistent with the earlier assessment by Dr. Barnett (R. at 24).

The ALJ relied on the fact that no doctor who had treated or examined the plaintiff had stated that he was disabled or seriously incapacitated. The ALJ noted that plaintiff had requested a disability statement from Dr. Reddy because of his tremors, which Dr. Reddy refused to do; Dr. Reddy indicated that "secondary gain may also be playing a role" (R. at 234). After assessing plaintiff's RFC, the ALJ determined that plaintiff could perform other work in the national economy. It is clear from the ALJ decision that he gave greater weight to the assessment by Dr. Barnett as compared to the assessment by Ms. Moreland.

It is proper for the ALJ to consider other evidence in the record when determining whether plaintiff's IQ score was valid and whether the record contained substantial evidence to support a finding that his IQ score was not an accurate reflection of his intellectual functioning. Lax v. Astrue, 489 F.3d 1080, 1087 (10th Cir. 2007). In Flores v. Asture, 285 Fed. Appx. 566, 568-

---

[1] According to the Diagnostic and Statistical Manual of Mental Disorders-4th ed., Text Revision (DSM-IV-TR), the diagnostic criteria for mental retardation is based on an IQ of up to approximately 70; borderline intellectual functioning is defined as an IQ range that is higher than that for mental retardation, generally 71-84 (2000 at 49, 48).

11

569 (10th Cir. July 30, 2008), the ALJ relied on a consultative psychological examination (as well as other evidence) to reject an IQ test score for purposes of listed impairment 12.05C. The ALJ found the assessment was consistent with a finding that the claimant retained the ability to follow simple oral instructions and perform simple tasks; the court upheld the finding of the ALJ.

The court will not reweigh the evidence or substitute its judgment for that of the Commissioner. Hackett v. Barnhart, 395 F.3d 1168, 1173 (10th Cir. 2005); White v. Barnhart, 287 F.3d 903, 905, 908, 909 (10th Cir. 2002). Although the court will not reweigh the evidence, the conclusions reached by the ALJ must be reasonable and consistent with the evidence. See Glenn v. Shalala, 21 F.3d 983, 988 (10th Cir. 1994)(the court must affirm if, considering the evidence as a whole, there is sufficient evidence which a reasonable mind might accept as adequate to support a conclusion). The court can only review the sufficiency of the evidence. Although the evidence may support a contrary finding, the court cannot displace the agency's choice between two fairly conflicting views, even though the court may have justifiably made a different choice had the matter been before it de novo. Oldham v. Astrue, 509 F.3d 1254, 1257-1258 (10th Cir. 2007). The court finds that sufficient evidence supports the decision of the ALJ to give greater weight to the opinions

expressed in the psychological assessment of Dr. Barnett (who opined borderline intellectual functioning) as compared to the psychological assessment by Ms. Moreland (who opined mild mental retardation).

As noted above, the ALJ clearly erred by failing to consider whether plaintiff's impairments met or equaled 12.05C at step three. However, sufficient evidence supported the ALJ's analysis and decision (when making his RFC findings) to give greater weight to the psychological assessment by Dr. Barnett, and to discount the opinions of Ms. Moreland. Application of the same analysis that the ALJ used in support of his RFC findings also provides a valid basis for a finding that the IQ score of 67 is not an accurate reflection of plaintiff's intellectual functioning at step three. For this reason, the ALJ's RFC analysis and findings would preclude a finding that plaintiff's impairments meet or equal listed impairment 12.05C. The court therefore finds that the ALJ's failure to consider listed impairment 12.05C in his step three findings is harmless on the facts of this case. See Fischer-Ross, 431 F.3d at 735.[2]

Plaintiff also argues that the ALJ mischaracterized

---

[2] In Fischer-Ross, the court held that the ALJ's findings at steps four and five and the record conclusively precluded claimant's qualifications under the listings at step three and no reasonable factfinder could conclude otherwise. Thus, any deficiency in the ALJ's articulation of his reasoning at step three was found to be harmless. 431 F.3d at 735.

plaintiff's condition by finding at step two that plaintiff had a severe impairment of "mental deterioration, possibly substance/alcohol related" (R. at 20). Plaintiff argues that the record contains no evidence that plaintiff's drug or alcohol abuse impacted his mental functioning (Doc. 11 at 18). First, the ALJ only indicated the possibility that his mental functioning was impacted by alcohol or substance use. Second, Dr. Witt prepared a report in which he found substance addiction disorders (R. at 310-322), and then prepared a mental RFC report in which he found that plaintiff had certain mental limitations (R. at 324-326). Thus the record does contain some evidence that plaintiff's drug or alcohol abuse may have impacted his mental functioning.

Plaintiff also alleges error by the ALJ because he did not apply the regulatory criteria for drug/alcohol abuse. However, an ALJ must first conduct the five-step inquiry without separating out the impact of alcoholism or drug addiction. If the ALJ finds that the claimant is not disabled under the five-step inquiry, then the claimant is not entitled to benefits and there is no need to proceed with the analysis under 20 C.F.R. §§ 404.1535 or 416.935. Only if the ALJ finds that the claimant is disabled and there is medical evidence of his or her drug addiction or alcoholism should the ALJ proceed under §§ 404.1535 or 416.935 to determine if the claimant would still be found

14

disabled if he or she stopped using alcohol or drugs. <u>Bustamante v. Massanari</u>, 262 F.3d 949, 955 (9th Cir. 2001). In this case, because the ALJ found that plaintiff was not disabled, there was no need to determine if plaintiff would still be found disabled if he stopped using alcohol or drugs. For these reasons, the court finds plaintiff's argument to be without merit.

IT IS THEREFORE ORDERED that the judgment of the Commissioner is affirmed pursuant to the fourth sentence of 42 U.S.C. § 405(g).

Dated this 10th day of August, 2010, Topeka, Kansas.

s/ Sam A. Crow
Sam A. Crow, U.S. District Senior Judge